In The Matter of the Complaint of SEDCO, INC., as owner of the MOBILE DRILLING UNIT SEDCO 135, its engines, tackle, apparel, etc., in the cause of Exoneration from or limitation of Liability, Plaintiff-Appellee,

v.

PETROLEOS MEXICANOS MEXICAN NATIONAL OIL CO., (PEMEX), Defendant,

Performaciones Marinas Del Golfo, S.A. (Permargo), Defendant-Appellant.

No. 84–2512.

United States Court of Appeals, Fifth Circuit.

Aug. 12, 1985.

Hirtz & McDonough, Ted Hirtz, Lawrence A. Lynn, Houston, Tex., Michael Marks Cohen, New York City, for Perforaciones Marinas Del Golfo, S.A.

Vinson & Elkins, Theodore G. Dimitry, Henry S. Morgan, Jr., Houston, Tex., Jim Mattox, Atty. Gen., Austin, Tex., Crady & Peden, Douglas S. Johnston, Houston, for plaintiff-appellee.

Daniel K. Hedges, U.S. Atty., Houston, Tex., Wells D. Burgess, Atty. Gen. Litigation Section, Washington, D.C., for U.S.A. —other interested party.

Before BROWN, POLITZ and JOLLY, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Before us is an appeal from the district court's order, 610 F.Supp. 306, refusing to order arbitration in a major lawsuit flowing out of the world's largest oil spill.[1] Presently plaguing the long suffering mariners

---

1. The district court entered its order on August 21, 1984. This order amended the court's order of March 30, 1982. *See, Matter of Sedco, Inc.,* 543 F.Supp. 561 (S.D.Tex.1982). The March 1982 order had dismissed Petroleos Mexicanos (Pemex) under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602 *et seq.* The August 1984 order vacated this decision and the district court ordered that Pemex' motion to dismiss for lack of subject matter jurisdiction be carried along with the trial on the merits. Before us, however, is the further portion of the district court's August 1984 order which denied the motion of Perforaciones Marinas del Golfo S.A. (Permargo) to order arbitration and issue a stay of litigation pending arbitration.

on their litigious voyage is an historically hatched rule of admiralty which often rears its head like a leviathan from the deep in order to founder those who seek interlocutory relief.[2] Today, however, possessed with recent chartings by the Supreme Court and Congress, we are able to keep hands steady on the helm past the *Schoenamsgruber* peril.[3] As pilots, we have often groused about the treacherous course compelled by these instructions from astronautical heights.[4] But as mariners of all ages, until such time as the wrecks and shoals disappear, we must ply our course with the navigational aids at our disposal. We hope our log which follows makes the voyage easier for those who must travel after us. The prizes secured on our voyage—judicial economy and the promotion of arbitration—are recompense for the perils. Safely ashore, we remand for the district court to order that Sedco and Permargo proceed to arbitration in accordance with their contract. Upon remand, the district court should consider whether the remaining litigation should be stayed pending arbitration.[5]

**I. *The Voyagers***

In June of 1979 the semi-submersible drilling vessel, SEDCO 135, owned by Sedco, Inc. (Sedco), was in the bay of Campeche, Gulf of Mexico, under bareboat charter to Perforaciones Marinas del Golfo, S.A. (Permargo), a Mexican drilling company. Permargo had contracted with Petroleous Mexicanos (Pemex), the Mexican state owned oil company, to drill oil wells. On June 3, a massive blowout took place. The SEDCO 135 was a total loss; the flow of oil into the Gulf became the largest oil spill in history.[6]

On September 11, 1979, Sedco filed a petition under the Limitation of Shipowners Liability Act, 46 U.S.C. § 181 *et seq.* All litigation by shrimpers, hotel owners, and governmental entities against Sedco, Permargo, and Pemex was consolidated into the limitation proceeding.[7] On September 23, Sedco tendered its defense to Permargo pursuant to an indemnity clause in the charter party. In part, the bareboat charter party stated that Permargo would:

> assume all responsibility for, including control and removal of, and to protect, and indemnify and hold harmless the

**2.** In *Schoenamsgruber v. Hamburg American Line,* 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989 (1935), the Supreme Court held that Courts of Appeals lacked jurisdiction to hear an appeal from a district court's stay of admiralty proceedings pending arbitration. The Court held that such stays are not final orders under what is now 28 U.S.C. § 1291, that they are not injunctions under what is now 28 U.S.C. § 1292(a)(1), and that they are not appealable interlocutory decrees under what is now 28 U.S.C. § 1292(a)(3). The Court reached its decision by means of an analytical framework premised on the differences among actions at law, in equity, or in admiralty. Stays in admiralty were deemed calendar orders and were nonappealable. The Supreme Court has reaffirmed its allegiance to *Schoenamsgruber. See Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 182–85, 75 S.Ct. 249, 253–54, 99 L.Ed.2d 233 (1955); *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co., Inc.,* 761 F.2d 198, 202 (5th Cir.1985); *Texaco, Inc. v. American Trading Transportation Co.,* 644 F.2d 1152, 1154 (5th Cir.1981).

**3.** At oral argument, the Court *sua sponte* raised the issue of whether it had appellate jurisdiction because of *Schoenamsgruber v. Hamburg American Line,* 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989

(1935). While neither party in this case challenges our jurisdiction, we must, of course, resolve any such problem before reaching the merits.

**4.** *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co., Inc.* at 200 ("a lumbering, antedeluvian concept that remains embedded in the judicial esse."); *Texaco v. American Trading* at 1154; *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane,* 732 F.2d 444, 445–47 (5th Cir.1984) (Rubin, J., dissenting).

**5.** After this appeal was taken, and subsequent to oral argument, the district court certified this case as worthy of an interlocutory appeal under 28 U.S.C. § 1292(b). Seeing no need to cross this jurisdictional reef in order to dispose of this case, we do not rush where angels fear to tread. For the record, the appeal came within ten days after entry of the order.

**6.** The blowout was finally capped in March of 1980.

**7.** The district court has determined that the SEDCO 135 is a vessel under the Limitation Act. *Matter of Sedco, Inc.,* 543 F.Supp. 561 (S.D.Texas 1982). That determination is not before us on this appeal.

owner [Sedco] and the vessel [SEDCO 135] from loss or damage arising from pollution or contamination, regardless of cause and without regard to the negligence of any party.

Permargo refused to defend Sedco. In the limitation proceeding Sedco then filed a third-party claim against Permargo and Pemex alleging that Permargo had breached its obligation to hold Sedco harmless under the charter. Sedco sought damages for the breach, indemnity for any sums Sedco was found liable to pay to third-parties, and attorneys' fees. The district court originally dismissed Pemex under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602 *et seq.*, but denied Permargo's motion to dismiss. Sedco then settled with the United States and certain class action plaintiffs. Sedco demands indemnity from Permargo for these payments.

Throughout the district court proceedings, Permargo has made extensive efforts to resist discovery on jurisdictional grounds. As a result of this jurisdictional jousting, Permargo did not file its first answer to Sedco's third party complaint until April 8, 1983; Permargo's answer thus came almost three years after being sued by Sedco. This answer raised as a defense an arbitration clause in the charter party between Sedco and Permargo. Then, on April 12, 1983, Permargo filed motions (i) for a stay pending arbitration and (ii) a mandatory order to direct arbitration. On August 24, 1984, the district court issued

an order reconsidering its dismissal of Pemex. The same order summarily denied both Permargo's motions regarding arbitration with the statement that "Pemex is now a party to the pending litigation and complete resolution of the matters before this court cannot be had without Permargo's participation as a party to this litigation." The questions for us to decide in this appeal are: (1) whether the district court's order refusing to order arbitration (with a stay of proceedings pending arbitration) is appealable; and, (2) if so, whether Permargo has waived its right to arbitration.

## II. *Arbitration*

### A. *The Party's Agreement*

■ Clause 21 of the charter party between Sedco and Permargo provides that they would submit "any dispute or difference between the parties" to arbitration in New York under the rules of the International Chamber of Commerce.[8] Sedco is a Texas company; Permargo is a Mexican company. Both Mexico and the United States are signatories to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (Convention), 3 U.S.T. 2517, T.I.A.S. No. 6957, 330 U.N.T.S. 38 [1970], republished as a note following 9 U.S.C. § 201.[9] The Convention contemplates a very limited inquiry by courts when considering a motion to compel arbitration:

1) is there an agreement in writing to arbitrate the dispute; in other words,

(emphasis added).

---

**8.** In its entirety Clause 21 states:

21. The construction, validity and performance of this Charter shall be governed by the laws of the State of New York, U.S.A. Each party hereby consents to submit to the jurisdiction of the courts of the State of New York. *Any dispute or difference between the parties arising out of this Charter* shall, at the request of either party, be referred to three arbitrators, one to be appointed by each party, and the third to be appointed by the two arbitrators. Such arbitration shall be in accordance with and subject to the rules of the International Chamber of Commerce and shall be conducted in New York City, New York, U.S.A. The decision of such arbitrators shall be binding on the parties and may be enforced in any court of competent jurisdiction.

**9.** The United States ratification made the following reservations:

The United States of America will apply the Convention, on the basis of reciprocity, to the recognition and enforcement of only those awards made in the territory of another Contracting state.

The United States of America will apply the Convention only to differences arising out of legal relationships, whether contractual or not, which are considered as commercial under the national law of the United States.

The Convention applies to all of the territories for the international relations of which the United States of America is responsible.

These reservations are not at issue in this case.

is the arbitration agreement broad or narrow; [10]

2) does the agreement provide for arbitration in the territory of a Convention signatory;

3) does the agreement to arbitrate arise out of a commercial legal relationship;

4) is a party to the agreement not an American citizen?

*Ledee v. Ceramiche Ragno*, 684 F.2d 184, 185–86 (1st Cir.1982).

■ If these requirements are met, the Convention requires district courts to order arbitration. Language similar to that used in the charter party arbitration clause between Sedco and Permargo has been described by the Court in *Caribbean Steamship Co. v. Sonmez Denizcilik Ve Ticaret*, 598 F.2d 1264, 1266 (2d Cir.1979). The court said "[i]t is difficult to imagine broader general language than that contained in the charter party's arbitration clause, 'any dispute'...." [11] Additionally, when confronted with arbitration agreements, we presume that arbitration should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue...." *Commerce Park of DFW Free-*

port v. Mardian Construction Co., 729 F.2d 334, 338 (5th Cir.1984), *quoting Wick v. Atlantic Marine, Inc.*, 605 F.2d 166, 168 (5th Cir.1979). Thus, as a general rule, whenever the scope of an arbitration clause is in question, the court should construe the clause in favor of arbitration. *United Steel Workers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); *City of Meridian, Miss. v. Algernon Blair, Inc.*, 721 F.2d 525, 527 (5th Cir.1983). We hold that the arbitration agreement between Sedco and Permargo is of the broad type.

### B. *The Arbitration Convention*

■ The Convention was negotiated pursuant to the Constitution's Treaty power. Congress then adopted enabling legislation to make the Convention the highest law of the land. As such, the Convention must be enforced according to its terms over all prior inconsistent rules of law.

Congress' implementing legislation for the Convention is found as part of the Arbitration Act. 9 U.S.C. § 1 *et seq.* Chapter 1 of Title 9 is the Federal Arbitration Act passed long ago to overcome American courts' common law hostility to the arbitration of disputes.[12] Chapter 2 of Title 9 is

---

10. As the court in *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir.1983) said: [s]imply stated, a court should compel arbitration, and permit the arbitrator to decide whether the dispute falls within the clause, if the clause is "broad." In contrast, if the clause is "narrow," arbitration should not be compelled unless the court determines that the dispute falls within the clause. Specific words or phrases alone may not be determinative although words of limitations would indicate a narrower clause. The tone of the clause as a whole must be considered.

11. The charter party contains several examples that the parties anticipated a possible blowout of the IXTOC I well. Clause 25 refers to a "wild well." Clause 24 specifies Permargo's obligations to indemnify Sedco for "loss or damage arising from pollution or contamination." Such anticipations are exactly the kinds of damage at issue in this lawsuit. This suffices to make Sedco's reliance upon *Texaco, Inc. v. American Trading Transportation Co.*, 644 F.2d 1152 (5th Cir.1981), ill-founded. In *Texaco* there was no question that Texaco's delictual claim for damages to its dock arose outside the Charter. Here

the precise issues at stake—pollution, contamination, drilling operations, indemnity—revolve around a "contemplated" blowout and thus fall within the Charter party agreement between Sedco and Permargo.

12. *See* H.R.Rep. No. 96, 68th Cong., 1st Sess., 1 (1924):

The need for the law arises from an anachronism of our American law. Some centuries ago, because of the jealousy of the English courts for their own jurisdiction, they refused to enforce specific agreements to arbitrate upon the ground that the courts were thereby ousted from their jurisdiction. This jealousy survived for so long a period that the principle became firmly embedded in the English common law and was adopted with it by the American courts.... This bill declares simply that such agreements for arbitration shall be enforced, and provides a procedure in the Federal courts for their enforcement. *Cf., Lincoln Mills of Alabama v. Textile Workers Union*, 230 F.2d 81 (5th Cir.1956) (Brown, J. dissenting), *reversed*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

devoted entirely to the Convention and Congress' enabling legislation. Thus, § 201 provides that the Convention "shall be enforced" by United States courts.[13] In substance, the Convention replicates the Federal Arbitration Act. Indeed, § 208 of the enabling legislation for the Convention incorporates all of the Convention into Chapter 1 of Title 9.[14] But while the Convention requires courts of the United States to enforce arbitration clauses along lines similar to those specified in the Arbitration Act, its reach is broader than the Arbitration Act. Both the Arbitration Act and the Convention provide that if a dispute in a pending lawsuit is subject to arbitration, the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had." [15] Both provide that the district court "shall make an order directing the parties to proceed to arbitration" when the site for arbitration is within the district.[16] But § 206 of the enabling legislation for the Convention also authorizes district courts to order parties to proceed with a Convention arbitration even outside the United States.[17]

13. 9 U.S.C. § 201:
   The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter.

14. 9 U.S.C. § 208:
   Chapter 1 applies to actions and proceedings brought under this chapter to the extent that that chapter is not in conflict with this chapter or the Convention as ratified by the United States.

15. 9 U.S.C. § 3:
   *If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration* under an agreement in writing for such arbitration, *the court* in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties *stay the trial of the action until such arbitration has been had* in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
   (emphasis added).

16. 9 U.S.C. § 4:
   *A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate* under a written agreement for arbitration *may petition any United States district court* which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, *for an order directing that such arbitration proceed* in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not an issue, *the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.* The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be an issue, the court shall proceed summarily to the trial thereof.... If the jury find that an agreement for arbitration was made in writing and that there ·is′ a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.
   (emphasis added).

17. 9 U.S.C. § 206:
   A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement.
   *See also* Article II:
   1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.
   2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.
   3. The court of a Contracting State, when seized of an action in a manner in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said

### C. The Policy of Encouraging Arbitration and the End of the Intertwining Doctrine

The Supreme Court leaves no doubt that: The goal of the convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standard by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.

*Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 517 n. 10, 94 S.Ct. 2449, 2456, 41 L.Ed.2d 270 (1974).

The Fifth Circuit has been friendly to arbitration except possibly in those limited areas affected by the intertwining doctrine; the securities and antitrust laws.[18] Now, however, the Supreme Court has rejected the intertwining doctrine [19] and mandated that courts enforce arbitration agreements as part of party's legitimate contractual expectations. *Dean Witter Reynolds v. Byrd,* — U.S. —, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), involved the securities laws—long held to be an area of special federal concern in our circuit. Based on this special concern for the exclusive federal interest in enforcement of the securities laws, we used the intertwining doctrine to override party's arbitration agreements to prevent the piecemeal adjudication of disputes. As the Court said in *Dean Witter Reynolds:*

> the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possible inefficient maintenance of separate proceedings in different forums.... By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall direct* the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.

(emphasis in original).[20]

Thus, *Dean Witter Reynolds* confirms the Court's teaching in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1982). In *Moses Cone* the Supreme Court held "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is

---

agreement is null and void, inoperative or incapable of being performed.

**18.** We most recently summarized the intertwining doctrine in *Tai Ping Insurance Co. v. M/V WARSCHAU,* 731 F.2d 1141 (5th Cir.1984):

> the intertwining doctrine ... is triggered when a party asserts several causes of action, at least one of which falls within the exclusive jurisdiction of the federal courts. In such a case, notwithstanding the existence of an arbitration clause, the entire dispute must remain in federal court to avoid encroachment by the arbitrator into an area that Congress has deemed to be within the federal court's exclusive jurisdiction.

**19.** "Along with the Ninth Circuit in this case, the Fifth and Eleventh Circuits have relied on the 'doctrine of intertwining.'" *Dean Witter Reynolds* at 1240. "In contrast, the Sixth, Seventh and Eighth Circuits have held that the Federal Arbitration Act divests the district courts of any discretion regarding arbitration...." *Dean Witter Reynolds* at 1240. "We agree with these

latter courts...." *Dean Witter Reynolds* at 1241. "[T]he relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Dean Witter Reynolds* at 1242, quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1982) (emphasis in original).

**20.** The Supreme Court was quite clear:

> [t]hat a court must compel arbitration of otherwise arbitrable claims, when a motion to compel arbitration is made. The Act, after all, does not mandate the arbitration of all claims, but merely the enforcement—upon the motion of one of the parties—of privately negotiated arbitration agreements. The House Report accompanying the Act makes clear that its purpose was to place an arbitration agreement "upon the same footing as other contracts, where it belongs" ... and to overrule the judiciary's long standing refusal to enforce agreements to arbitrate.

*Dean Witter Reynolds* at 1242. (citation omitted).

construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."

■■■ Thus, "[a]bsent allegations of fraud in the inducement of the arbitration clause itself, arbitration must proceed when an arbitration clause on its face appears broad enough to encompass the party's claims." *Life of America Insurance Co. v. Aetna Life Insurance Co.*, 744 F.2d 409, 413 (5th Cir.1984); *Commerce Park at DFW Freeport v. Mardian Constr. Co.*, 729 F.2d 334, 338 (5th Cir.1984); *Prima Paint Corp. v. Flood and Conklin Manufacturing Co.*, 388 U.S. 395, 406, 87 S.Ct. 1801, 1807, 18 L.Ed.2d 1270 (1967). "Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute, but not to the arbitration agreement." *Tai Ping* at 1146; *Cf. Commerce Park* at 339.

### D. *The Schoenamsgruber Peril: Appealability of the Motion to Compel Arbitration*

In *Schoenamsgruber v. Hamburg American Line*, 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989 (1935), the Supreme Court held Courts of Appeals lacked jurisdiction to hear appeals from a district court's order *staying* an admiralty proceeding pending arbitration.[21] Accordingly, we must closely examine the district court's order and the Convention to see if *Schoenamsgruber* causes us to founder.

■■■ The district court had before it two separate motions from Permargo. It chose, however, to dispose of both motions by means of one order. The district court

denied both Permargo's motions (i) for an order directing arbitration and (ii) to stay all proceedings pending arbitration. The court denied the motions because of its ruling that Pemex was now a party to the litigation. In its order, the district court stated that arbitration had to be denied since Pemex was not bound by the arbitration clause in the charter party agreement between Sedco and Permargo.[22] While it appears that the district court based its decision to deny Permargo's motions upon the now rejected doctrine of intertwining, our case cannot be solved by a simple remand. The district court rejected motions made under the Convention. This Convention is the supreme law of the land. By its ratification in 1970, the United States obligated itself to enforce arbitration agreements between foreign and domestic contracting parties. Any law or decision prior in time to this express undertaking must be construed as consistent with the Convention or set aside by it.

Our decision is further supported by the recent opinion in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, —— U.S. ——, 105 S.Ct. 3346, 85 L.Ed.2d —— (1985). Despite the uniform rule throughout the Circuits that federal antitrust claims are inappropriate for arbitration, the Court ruled that antitrust claims are arbitrable under the Federal Arbitration Act when they are encompassed within a valid arbitration clause in an agreement embodying an international commercial transaction. The Court focused on:

> concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the

---

21. *See* note 2, *supra*. We have, of course, consistently adhered to *Schoenamsgruber. See Texaco, Inc. v. American Trading Transp. Co.*, 644 F.2d 1152, 1154 (5th Cir.1981): "For reasons more historical than logical an order denying a stay pending arbitration in a proceeding in admiralty is not an appealable order." In *Coastal (Bermuda) Ltd. v. E.W. Saybold & Co.*, 761 F.2d 198, 200 (5th Cir.1985): "We are as a rule bound to the mummified notion that stays in admiralty are nonappealable interlocutory orders." This is distinguished from the rule in our circuit which has allowed immediate appealability un-

der 28 U.S.C. § 1292(a)(1) of "an order granting a stay of arbitration pending [the] outcome of litigation...." *Texaco, Inc. v. American Trading Transp. Co.*, 644 F.2d 1152, 1154 (5th Cir. 1981).

22. The actual wording of the order denying the motion to compel arbitration was: "Pemex is now a party to the pending litigation and complete resolution of the matters before this court cannot be had without Permargo's participation as a party to this litigation."

need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context.

The Convention was passed in order to secure the right of arbitration in a commercial context among foreign and domestic parties. Congress could not have intended that a court's refusal to enforce an arbitration agreement falling under the Convention would be immediately appealable in a nonmaritime action—at law or equity—but would be shielded from appellate scrutiny in an admiralty suit. Accordingly, *Schoenamsgruber's* mummified prohibition on the nonappealability of stays in admiralty, to the extent that it interferes with United States obligations under the Convention, must give way.[23] We cannot extend the relic of *Schoenamsgruber* under 9 U.S.C. § 8 to 9 U.S.C. § 206. We hold that we have jurisdiction on this appeal to carry out the important congressional policy of insuring that arbitration contracts are enforced in the courts pursuant to the Convention. Moreover, to the extent that *Schoenamsgruber* was influenced by the ancient view that an admiralty court lacked the power to issue an injunction, the law has progressed. Judges may now "stride the quarterdeck" and issue injunctions. *C.A.V.N. v. Perez*, 303 F.2d 692 (5th Cir. 1962), *cert. denied*, 371 U.S. 942, 83 S.Ct. 321, 9 L.Ed.2d 276 (1962). Although the trial court did not style its order as the denial of an injunction, its order has all the earmarks of a denial of injunctive relief

under 28 U.S.C. § 1292. Permargo sought an order to compel the affirmative action of arbitration outside the litigation. If Permargo's motion had been granted instead of denied, the court's order would have required Sedco to participate in arbitration in New York. Such an order would be, in effect, a mandatory injunction. Accordingly, the district court's refusal to grant the injunction mandated by the Convention is appealable under 28 U.S.C. § 1292 in order to prevent the United States from violating its Treaty obligations with 65 nations.[24]

Although our usual course would be to remand for the district court to correct its error of law in not ordering arbitration, here the district judge who entered the order is no longer on the bench. However, after three years of extensive discovery with well over 400 docket entries, the record before us is adequate to see that the requisites mandating the issuance of an order to arbitrate under the Convention have been met. Indeed, under the Convention any factual inquiry prior to a court being required to enforce an arbitration clause is strictly limited. *See*, Convention, Art. II; *Ledee v. Ceramiche Ragno*, 684 F.2d at 185–86; *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1982); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806–07, 18 L.Ed.2d 1270 (1967); *cf. Oil, Chemical & Atomic Workers v. American Petrofina Co.*, 759 F.2d 512, 515 (5th Cir.1985) ("obligation of the parties to submit to the arbitrator the issue of arbitrability. . . .").[25]

**23.** The court in *Rhone Mediterranee Compagnia v. Lauro*, 712 F.2d 50 (3d Cir.1983), held *Schoenamsgruber* to be inapplicable to the stay of a lawsuit pending arbitration under the Convention.

**24.** Since this arbitration arises under the Convention it is different than domestic arbitration. However, we express no opinion on the availability of mandamus or *Cohen's* collateral order doctrine. *Cf., Coastal (Bermuda) Ltd. v. E.W. Saybolt*, 761 F.2d 198, 203 n. 5 (5th Cir.1985).

**25.** Arbitration is justified additionally because the arbitrators appointed by the parties are pre-

sumably specialists, familiar not only with the relevant statutory and common law, but also with custom and usage of the trade. Moreover, the use of arbitration procedures eases the workload of busy courts. *See Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59 (2d Cir.1983). Indeed, arbitration is a classic alternative dispute resolution mechanism which needs to be encouraged, not discouraged. Further, as we observed in *Tai Ping Ins. Co.* at 1145 n. 3, arbitration may promote judicial efficiency since the arbitrator's determination essentially establishes ultimate liability.

As we have emphasized throughout, the arbitration clause, in light of the substantive provisions of the charter party, is extremely broad. Consequently, we determine that it encompasses substantially all of the potential controversies growing out of the blowout of the IXTOC I well. Although in some situations we have stated that the court should first determine whether, and what, issues are for arbitration, we think that given the broad framework of the arbitration clause in this situation, the arbitrators should initially determine which of the intricate factual disputes come within the arbitration clause.[26] It goes without saying that questions as to the conduct of the arbitration are reserved to the United States District Court for the Southern District of Texas.

### E. *The Possibility of Waiver*

Although arbitration is a contractual right which can be waived[27] and Article II of the Convention contemplates the possibility of waiver of an arbitration agreement, the facts of this case do not demonstrate such a waiver. *See I.T.A.D. Associates, Inc. v. Podar Bros.*, 636 F.2d 75, 77 (4th Cir.1981). Here Permargo raised the defense of arbitration in its answer. The only foundation for Sedco's assertion of waiver is the passage of time between filing of the limitation proceeding and the filing of Permargo's answer. As

the court observed in *Hilti v. Oldach*, 392 F.2d 368, 371 (1st Cir.1968) "[w]e start with the fact that defendant's answer, in its special defense, served notice on plaintiff of the arbitration defense. Given this, the burden is heavy on one who would prove waiver."

Indeed, though the sparring in *Hilti* was for "nearly two years," the court thought it more important that the delay in the proceedings was caused by legitimate pre-arbitration discovery.[28] *Southwest Industrial Import & Export v. Wilmod Co., Inc.*, 524 F.2d 468, 470 (5th Cir.1975) (willing participation in settlement discussions & reselling goods not waiver of arbitration rights); *Germany v. River Terminal Railway Co.*, 477 F.2d 546, 547 (6th Cir.1973) ("waiver may not be inferred from the fact that a party does not rely exclusively on the arbitration provisions of a contract, but attempts to meet all issues raised in litigation between it and another party to the agreement.")

In the case before us, the long fought dispute about whether the district court had jurisdiction over Permargo and Pemex likewise must be described as legitimate. Nor has Sedco been able to demonstrate that this jurisdictional jousting has been prejudicial. *See also I.T.A.D. Associates, Inc.* at 77; *Robert Lawrence Co. v. Devonshire Fabrics*, 271 F.2d 402, 412–13

---

**26.** *See City of Meridian, Miss. v. Algernon Blair, Inc.*, 721 F.2d 525, 528–29 (5th Cir.1983):

Even if Blair does *not* have what we consider to be a valid substantive claim, the courts do not have the authority to enjoin arbitration on that ground. That is for the arbitrator to decide. *Once we determine that the subject matter of the dispute is covered by the arbitration clause and that the party initiating arbitration is covered by the clause,* we must allow the matter to be submitted to arbitration. Our sole function is to determine whether arbitration should be commenced; we play no part in determining the strength of claims and defenses presented.
(emphasis added)

**27.** In *Burton-Dixie Corp. v. Timothy McCarthy Constr. Co.*, 436 F.2d 405, 407–08 (5th Cir.1971), we said:

It is well established that agreements to submit disputes ... to arbitrators, just like any

other contract terms, may be waived. (citations omitted) There is no set rule, however, as to what constitutes a waiver or abandonment of the arbitration agreement. The question depends upon the facts of each case and usually must be determined by the trier of fact.

**28.** Thus, while it is true that "[a] defendant can waive arbitration by actions which it takes during determination in the legal forum of the threshold issue of existence of an arbitration contract, if those actions are sufficiently inconsistent with the right to arbitrate ... it loses sight of the purposes and effects of arbitration ... to treat the court proceedings as a sort of judicial tightrope which the party seeking arbitration walks at his peril." *General Guar. Ins. Co. v. New Orleans General Agency, Inc.*, 427 F.2d 924, 929 (5th Cir.1970).

(2d Cir.1959), *cert. granted*, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618 (1960), *cert. denied*, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960). We hold there has been no waiver.[29]

### Conclusion

Our review of the language and purposes of the Convention and its enabling legislation lead us to conclude that (i) this appeal is properly before us and (ii) the district court erred in refusing to order arbitration. The parties agreed in writing that all disputes arising from their contractual relationship would be submitted to arbitration. Such an agreement falls squarely within Article II of the Convention. 9 U.S.C. § 206 does not confer discretion in compelling arbitration. *I.T.A.D. Associates, Inc. v. Podar Bros.*, 636 F.2d 75, 77 (4th Cir. 1981). On remand the district court should order the parties to perform their arbitration agreement.

REMANDED WITH INSTRUCTIONS.

---

**29.** "We note that matters of procedural arbitrability, such as, *inter alia,* whether the request for arbitration was timely under the arbitration agreement, are for the arbitrator to decide." *Commerce Park at DFW Freeport v. Mardian Constr. Co.,* 729 F.2d at 339 n. 5 (5th Cir.1984).