**ENSCO OFFSHORE COMPANY,**
Plaintiff,

v.

**TITAN MARINE L.L.C., Respondent.**

No. CIV.A. B–05–031.

United States District Court,
S.D. Texas,
Brownsville Division.

Feb. 24, 2005.

Michael John Maloney, Maloney, Martin & Mitchell, L.L.P., Houston, TX, for Plaintiff.

John J. Tomaselli, Tomaselli and Co., Ft. Lauderdale, FL, Jeffrey James Putnam, Mark Cohen, Cohen, Gorman, Putnam, L.L.P., Houston, TX, for Defendant.

## ORDER

HANEN, District Judge.

On February 16, 2005, this Court held a hearing on a motion for declaratory judgment (Docket No. 1) and a motion for temporary injunction (Docket No. 2) filed by the plaintiff, Ensco Offshore Company ("Ensco"), a corporation head-quartered in Dallas, Texas. Both motions are opposed by the defendant, Titan Marine, L.L.C. ("Titan"), a corporation head-quartered in Florida. The parties admit this court has diversity jurisdiction.

### A. Background

The dispute involves a contract to salvage the ENSCO 64 rig, which was located ninety miles south of the coast of Louisiana in the Gulf of Mexico. The rig had been severely damaged by Hurricane Ivan in September 2004. Titan, a salvage company, was to effectuate the salvage of the legs and other pieces of the rig and deliver those for repair in Brownsville, Texas.

The contract was negotiated and the parties, either because they knew an agreement could not be reached in a timely fashion or because of a compromise, ended up with a choice-of-law/arbitration provision which reads as follows:

**18. Governing Law and Arbitration**

18.1 This agreement shall be governed by and construed in accordance with English law and any dispute arising out of this Agreement shall be referred to Arbitration in London in accordance with the Arbitration Act of 1996 or any statutory modification or re-enactment thereof for the time being in force.

Any dispute arising hereunder shall be referred to the arbitrament of a sole Arbitrator, to be selected by the first party claiming arbitration from the persons currently on the panel of Lloyd's Salvage Arbitrators with a right of appeal from an award made by the Arbitrator to either party by notice in writing to the other within 28 days of the date of publication of the original Arbitrator's Award.

The Arbitrator on appeal shall be the person currently acting as Lloyd's Appeal Arbitrator.

No suit shall be brought before another Tribunal, or in another jurisdiction, except that either party shall have the option to bring proceedings to obtain conservative seizure or other similar remedy against any assets owned by the other party in any state or jurisdiction where such assets may be found. Both the Arbitrator and Appeal Arbitrator shall have the same powers as an Arbitrator and an Appeal Arbitrator under LOF 1995 or any standard revision thereof, including a power to order a payment on account of any monies due to the Contractor pending final determination of any dispute between the parties hereto.

At some point during the relationship, Titan and Ensco became embroiled in a controversy and Ensco terminated the contract. Titan then sought to invoke the arbitration provision in London in an effort to recover monies it claims it is owed. Ensco, rather than appear and participate in the arbitration, sought relief in this Court claiming that the above-quoted paragraph 18.1 of the contract violated 9 U.S.C. § 202, which in part prohibits the enforcement of international arbitration agreements under the Convention on the Recognition and Enforcement of Foreign

Arbitral Awards (hereinafter the "Convention"). Section 202 states as follows:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

Ensco claims that § 202 makes the otherwise enforceable arbitration clause unenforceable because the agreement to arbitrate in London was between two United States companies and none of the stated exceptions are applicable.

Titan in its reply and at the hearing argued that: (1) the rig was in international waters and was, therefore, abroad; (2) there was a substantial relationship with London due to it being the international center of the salvage market and because, to a great extent, the real party in interest to the salvage operation was the London syndicate of underwriters that "insured" the rig; (3) the clause in question was the product of arms-length negotiations between two sizable entities and the cases which Ensco cites involved contracts of adhesion where the bargaining power was totally one-sided; and (4) the contract in question anticipated sub-contracts which involved English entities.[1]

## B. Choice of Law

Titan argues that the law of England should control this analysis-English law being the law specified in paragraph 18.1 of the contract. Titan maintains, and Ensco seemingly concedes, that English law has no counterpart to § 202 and that an arbitrator in England would enforce the arbitration clause as written.

The general rule for a court sitting in a diversity matter is to apply the choice of law rules of the state in which it sits. *United States ex rel. Varco Pruden Bldgs. v. Reid & Gary Strickland Co.*, 161 F.3d 915, 919 (5th Cir.1998). Texas law applies the law chosen by the parties to the contract unless the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice. *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex.1990).

By statute, Texas has actually defined "reasonable relationship" for contracts over $1,000,000. TEX. BUS. & COM. CODE ANN. § 35.51(d). That statute defines reasonable relationship to include any jurisdiction if: (1) a party to the transaction resides there; (2) a party has its place of business there or an office in which it conducted a substantial part of the negotiations relating to the transaction; (3) all or any part of the subject matter is located there; (4) a party is required to perform a substantial amount of its obligations there; or (5) a substantial part of the negotiations and the execution of the contract occurred in that jurisdiction.

Regardless of the criteria (case law or statute), the results in this case are the same. None of the factors favor the application of English law. Each factor occurred in the United States with most or a

---

1. Primary among those entities was the contract between Titan and the BOLD ENDEAV-

OR, a British flag diving support vessel engaged to facilitate major portions of the job.

good portion of them occurring in Texas.[2] None of the factors occurred in England. That being the case, the Court holds that English law does not govern the interpretation of the agreement between Ensco and Titan.

## C. Arbitration and the Convention

To say that it is the public policy of the United States and the Fifth Circuit to enforce contractually agreed-upon arbitration provisions would be an understatement. It is hard to imagine a topic in recent years in which the Fifth Circuit has written more frequently and more consistently. Its statements are clear and concise. If there is an agreement in writing to arbitrate, it is the public policy of the federal courts to enforce that provision. *Walton v. Rose Mobile Homes L.L.C.,* 298 F.3d 470, 473 (5th Cir.2002). This Circuit has held that the federal policy favoring arbitration "applies with special force in the field of international commerce." *Francisco v. STOLT ACHIEVEMENT MT,* 293 F.3d 270, 275 (5th Cir.2002) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 631, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). The obvious problem is that § 202 seems to state a different public policy for international arbitrations involving solely American parties.

The Convention contemplates a very limited inquiry when considering a motion to compel arbitration. Courts are instructed to look at four factors:

1. Is there a written agreement to arbitrate;

2. Does the agreement provide for arbitration in the territory of a Convention signatory;

3. Does the agreement to arbitrte arise out of a commercial legal relationship; and

4. Is a party to the agreement not an American?

*Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.,* 767 F.2d 1140, 1144–45 (5th Cir.1985). The parties concede that the answers to the first three questions are all "yes" and this court clearly agrees. The parties basically agree, however, that the answer to the last question is no.[3]

Although both parties are United States corporations, the lack of a foreign citizen as a party to the agreement does not render the Convention necessarily inapplicable. *Freudensprung v. Offshore Technical Servs., Inc.,* 379 F.3d 327, 339–340 (5th Cir.2004). The Fifth Circuit in *Freudensprung* expanded the inquiry under the fourth factor to comport with the language of 9 U.S.C. § 202. The true question is whether "there is a reasonable connection between the parties' commercial relationship and a foreign state that is independent of the arbitral clause itself." *Id.* at 341. Thus, the Convention can apply to an agreement between two American entities as long as the agreement is reasonably related to a foreign state. Moreover, the fact that an agreement contains arbitration and choice-of-law clauses identifying a foreign country does not in and of itself meet the fourth factor's requirement.

The course of action to undertake when an agreement involving two U.S. citizens agreeing to a foreign arbitration

---

**2.** The parties disagree as to whether the actual performance of the work was to take place in international waters or on the rig, which Ensco claims is considered United States territory. Suffice it to say, none of the performance was in England.

**3.** Titan made a half-hearted complaint that it did not know what Ensco's citizenship really was based upon website information, but ultimately concedes the Ensco entity which is a signatory to the contract is a United States corporation as is Titan.

clause is missing a foreign element other than the arbitration clause is unclear. The case law in this Circuit and others is not overwhelming in either its breadth or its depth. The parties in this case contest whether there is a reasonable connection between the parties' commercial relationship and a foreign state that is independent of the arbitral clause itself. Titan argues that the Court should adopt *Freudensprung* and ignore the Second Circuit case of *Jones v. Sea Tow Servs., Inc.*, 30 F.3d 360 (2nd Cir.1994) because a foreign element does exist within the contract. Ensco argues the opposite.

The panel in *Freudensprung* is one of the few Fifth Circuit panel's to address the issue extensively.

This Court has yet to address whether the Convention applies to an arbitration agreement between two U.S. Citizens. We note at the outset that this Court's four-prong test, therefore, was articulated previously in the context of cases involving at least one foreign party to the agreement and derives from this Court's opinion in *Sedco*, which in turn paraphrases the four criteria set forth by the First Circuit in *Ledee*. *See Sedco*, 767 F.2d at 1146 (citing *Ledee*, 684 F.2d at 185–86). The First Circuit, however, closely tracking the language of 9 U.S.C. § 202, did not require the presence of a non-U.S. party in all circumstances, instructing that the fourth criterion requires that courts ask: "Is a party to the agreement not an American citizen, *or does the commercial relationship have some reasonable relation with one or more foreign states?*" *See Ledee*, 684 F.2d at 185–86 (emphasis added). Consistent with this approach, the only federal appellate courts to have addressed the applicability of the Convention to an arbitration agreement between two U.S. citizens, the Second Circuit and the Seventh Circuit, agree that the Convention may apply in such cases

provided that there is a "reasonable relation" between the parties' commercial relationship and some "important foreign element." *Jones v. Sea Tow Servs., Inc.*, 30 F.3d 360, 366 (2d Cir. 1994); *Lander Co. v. MMP Investments, Inc.*, 107 F.3d 476, 481 (7th Cir. 1997).... In *Jones*, the Second Circuit found on the facts before it that the commercial relationship between the U.S. citizen disputants lacked the requisite "foreign element" and thus the arbitration agreement arising from that relationship was not governed by the Convention. 30 F.3d at 366. In that case, U.S. citizens hired a U.S. salvor pursuant to a Lloyd's standard form salvage agreement ("LOF") to rescue their yacht, which had grounded in U.S. waters off Long Island, New York. *Id.* at 361–62. The relationship between the parties "did not involve property abroad nor did it envisage performance abroad." *Id.* at 365. The only purportedly foreign element in this otherwise wholly domestic matter was found in the LOF itself, which contained an arbitral clause providing for arbitration in England under English law. *Id.* at 362. The Second Circuit found that "[t]he reasonable relation requirement necessary to make the arbitration provision in the LOF cognizable under the Convention" could not be fulfilled by the terms of the LOF itself-that is, the LOF's arbitration provision and its English choice-of-law clause. *Id.* at 366. Rather, the *Jones* Court reasoned, there had to be some reasonable connection to a foreign country independent of these provisions in the LOF. *Freudensprung*, 379 F.3d at 340. The Circuit distinguished the result in *Jones* because, even though the agreement in *Freudensprung* also involved two U.S. citizens, it contemplated performance in West Africa. Instead of adopting the *Jones* decision, the Court found the Seventh Circuit

case of *Lander Co. v. MMP Investments, Inc.*, 107 F.3d 476 (7th Cir.1997) to be more instructive.

*Lander*, however, involved circumstances similar to those before us. *See* 107 F.3d at 481. The Seventh Circuit found in *Lander* that 9 U.S.C. § 202, though phrased in the negative, applied (concurrently with the FAA) to an arbitration agreement in a contract between two U.S. corporations where the only link between their relationship and a foreign nation was that their contract was to be performed in Poland. *Id.* at 478, 481. In that case, the two U.S. corporations, MMP and Lander, entered into a contract for the distribution by MMP in Poland of products manufactured by Lander in the United States. *Id.* at 478. The contract contained an arbitration clause providing that disputes would be subject to binding arbitration to be conducted in New York. *Id.* Although both parties were U.S. citizens, the arbitration was to take place in the United States, and the only foreign connection to the parties' legal relationship was that the distribution contract "envisage[d] performance … abroad," the Seventh Circuit concluded that the parties' agreement fell squarely within the Convention Act's scope and squarely outside its exclusion for agreements that have no foreign tie. *Id.* at 482 (noting that 9 U.S.C. § 202 "adopts the provisions of the Convention for any arbitration agreement … arising out of a [commercial] legal relationship, … provided only that if the relationship is entirely between U.S. citizens, it must involve performance abroad or have some other reasonable relation with a foreign country").

The Fifth Circuit concluded its analysis in *Freudensprung* by stating, "In this case, both *Jones* and *Lander* compel the conclusion that the Convention Act governs the arbitral clause at issue concurrently with the FAA because there is a reasonable connection between the parties' commercial relationship and a foreign state that is independent of the arbitral clause itself." *Freudensprung*, 379 F.3d at 341.

The facts in the case at hand are neither like those in *Jones* where all of the pertinent actions took place in the United States or U.S. waters, nor like those in *Freudensprung* where the actual performance was in Africa. This matter between two U.S. citizens takes place in the Gulf of Mexico, 90 miles off the Louisiana coast, with the final destination being Brownsville, Texas. There is no reasonable connection between the parties' commercial relationship and a foreign state. The only "state" involved is the United States. No performance of any kind was contemplated in England.

Both parties concede that the center of the worldwide salvage industry and salvage arbitration is London. The defendants in *Jones* attempted to argue that the parties contemplated enforcement in London because of its status as the center of the salvage industry. The *Jones* court rejected that argument.

> As between the parties…a United States forum is required for the enforcement of any arbitral award and even to compel arbitration. The District Court's observation that the Committee of Lloyd's has a long history of experience in the arbitration of salvage disputes lends no support to the conclusion that the parties envisioned performance in England. There is no indication that competent salvage arbitrators are unavailable in the United States or that the necessary expertise is lacking here.

*Jones*, 30 F.3d at 366. However, this Court does not feel that it can just adopt *Jones'* discussion without noting that the factual situation is different herein. First of all, this was a contract between two sophisticated commercial companies. Sec-

ondly, this was a negotiated contract, not one entered into during a misadventure by two individuals. Lastly, both parties were aware that the contract contained the English choice-of-law/arbitration provision when they executed it and they seemingly accepted it as a necessary part of reaching an agreement with one another. While it may not have been the preferred jurisdiction of either party, this situation certainly does not mirror the factual scenario faced by the *Jones* court.

Consequently, the question really becomes whether two sophisticated entities can negotiate around § 202. Stated differently, can a company that knowingly entered into a contract that contained a choice-of-law/arbitration clause such as the one quoted above avoid the consequences of such an agreement by claiming the protections offered by § 202? This Court has not found a case from any Circuit which resolves the issue at hand. This Court, therefore, concludes that, despite the federal policy favoring arbitration, upholding a foreign arbitration provision in an agreement between two U.S. citizens would thwart the stated public policy of Congress in enacting § 202. In other words, parties cannot contract around § 202.

The legislative history of § 202 indicates that it was intended to ensure that "an agreement or award arising out of a legal relationship exclusively between citizens of the United States is not enforceable under the Convention in the courts of the United States unless it has a reasonable relation with a foreign state." H.R.Rep. No. 91–1181, 91st Cong., 2d Sess. 2 (1970), *reprinted in* 1970 U.S.C.C.A.N. 3601, 3602. *See also Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 933 (2nd Cir.1983).[4] There is also some indication that the language of § 202 was taken from the Uniform Commercial Code, language suggesting that the term "abroad" specifically refers to a connection with a foreign state.

We have included in section 202 a requirement that any case concerning an agreement or award solely between U.S. citizens is excluded unless there is some important foreign element involved, such as property located abroad, the performance of a contract in a foreign county, or a similar reasonable relation with one or more foreign states. The reasonable relationship criterion is taken from the general provisions of the Uniform Commercial Code. Section 1–105(1) of the code permits the parties to a transaction that bears a reasonable relationship to any other state or nation to specify that the law of that state or nation will govern their rights and duties.

*Fuller Co. v. Compagnie Des Bauxites De Guinee*, 421 F.Supp. 938, 941 (W.D.Pa. 1976) (citing the testimony of Richard D. Kearney before the Senate Committee on Foreign Relations on February 13, 1970).

The above-cited history indicates that Congress did not envision American companies with a dispute just off the Gulf Coast with eventual performance in Texas to be property, performance, or enforcement "abroad." Not one of the cases cited by the parties or found by the Court have found the Convention to apply to a situation where two American entities were entangled in an offshore dispute where the envisaged performance was in the United States. Titan argues that this court should consider *Freudensprung* as author-

---

**4.** The requirement that there be a reasonable relationship with a foreign state has been asserted in at least two Fifth Circuit opinions, albeit in dicta: *Beiser v. Weyler*, 284 F.3d 665, n. 2 (5th Cir.2002) and *In re Arbitration Between: Trans Chemical Ltd. & China Nat'l*

*Machinery Import & Export Corp.*, 978 F.Supp. 266, 293 (S.D.Tex.1997) adopted by *Trans Chemical Ltd. v. China Nat'l Machinery Import & Export Corp.*, 161 F.3d 314, 319 (5th Cir.1998).

ity to this proposition. This Court reaches a different conclusion. *Freudensprung* involved a derrick barge off the coast of Lagos, Nigeria. This was the basis for the Fifth Circuit distinguishing *Jones*. The Circuit concluded offshore Nigeria was "abroad;" however, it did not hold that any "offshore" event connected to the contract was "abroad" for purposes of this statute.

While Ensco argues that the word "abroad" must be interpreted in light of the last clause of the second sentence of § 202–"...some other reasonable relationship with one or more foreign states"-this Court need not resolve that issue to decide this dispute. Regardless of the interpretation one uses, the clear intent was that the "legal relationship" be commercial in nature and that the legal relationship involve property, performance, or enforcement in some foreign state. It did not contemplate that two American companies with no connection to any foreign country (keeping in mind the rig is offshore Louisiana) be subject to the Convention. Thus, the fact that the rig sat in international waters and would require work more than twelve miles off the coast of the United States is insufficient in and of itself to qualify this agreement under the exceptions outlined in § 202.

Further, there is not a reasonable link between the legal relationship and England or any other foreign state. The United States is the only country with a vested interest in this dispute.[5] Insurers in London or subcontractors, such as the owners of the British flag vessel BOLD ENDEAVOR, who are not parties to the contract and, therefore, not part of the legal relationship or dispute at issue herein, do not sway the analysis. As critical as their

role may have been in the motivation of these two parties, § 202 requires that in order to fall under one of its exceptions, the foreign element must involve the legal relationship in which the arbitration agreement or arbitral award arises. English insurers or subcontracts are not part of the legal relationship between Ensco and Titan and, therefore, do not bring this contract under the auspices of the Convention.

## D. Conclusion

All discussions of 9 U.S.C. § 202 indicate that there must be a reasonable relation to a foreign state in order to enforce an arbitration agreement under the Convention. That being the case, this Court finds the arbitration agreement between Ensco and Titan to be unenforceable under the Convention due to the dictates of § 202 and hereby **GRANTS** Ensco a declaratory judgment to that effect. All previous orders issued by this Court remain in effect.

---

5. The parties are U.S. corporations. The rig is considered U.S. property. 43 U.S.C. § 1333(a)(1). It was to be towed to the United States and repaired in Brownsville, Texas. The presence of English insurance syndicates or subcontractors-not parties to the contract or dispute and not involved in what § 202 terms the "legal relationship"-are not enough to place this contract under § 202's exceptions.