IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

—————————————

No. 01-30694

—————————————

ERNESTO FRANCISCO,

                                              Plaintiff-Appellant,

versus

STOLT ACHIEVEMENT MT, a vessel bearing
official number 1973; STOLT ACHIEVEMENT,
INC.; STOLT-NIELSEN TRANSPORTATION
GROUP, LTD.; STOLT PARCEL TANKERS, INC.,
the operator and/or owner of the M/T Stolt
Achievement,

                                              Defendants-Appellees.

Appeal from the United States District Court for
the Eastern District of Louisiana
_____

June 4, 2002

Before KING, Chief Judge, REAVLEY and WIENER, Circuit Judges.

REAVLEY, Circuit Judge:

    In this appeal we conclude that the district court properly ordered the case to

arbitration and accordingly affirm.

BACKGROUND

Appellant Ernesto Francisco, a Philippine national, was injured on a chemical tanker ship located on the Mississippi River. Francisco was employed aboard the M/T Stolt Achievement (the vessel), which was allegedly operated by Stolt-Nielsen Transportation Group, Inc., (Stolt) a Liberian corporation.

Stolt's "Crewing Manager" submitted an affidavit attesting that when Stolt hires Philippine seamen, it must comply with employment contract requirements of the Philippine Overseas Employment Administration. Francisco signed such a contract. The contract contains lengthy provisions addressing employee compensation and benefits in the event of work-related injury, illness, or death. It provides in section 29 of the "Standard Terms and Conditions" that in the event of "claims and disputes arising from this employment," the parties agree to arbitrate their disputes in the Philippines.[1] Section 31 of the same document provides that "[a]ny unresolved dispute, claim or grievance

_____

[1] Section 29 states: "In cases of claims and disputes arising from this employment, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators. If the parties are not covered by a collective bargaining agreement, the parties may at their option submit the claim or dispute to either the original and exclusive jurisdiction of the [Philippine] National Labor Relations Commission (NLRC), pursuant to Republic Act (RA) 8042 otherwise known as the Migrant Workers and Overseas Filipinos Act of 1995 or to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators." Section 10 of the Migrant Workers and Overseas Filipinos Act of 1995 provides that disputes submitted to the NLRC are resolved by arbitration. Hence, our reading of the contract is that all claims and disputes arising from the employment are subject to arbitration, regardless of whether there is a collective bargaining agreement and regardless of whether the parties opt to proceed before the NLRC.

arising out of or in connection with this Contract . . . shall be governed by the laws of the Republic of the Philippines, international conventions, treaties and covenants where the Philippines is a signatory."

Francisco sued Stolt in Louisiana state court, asserting claims under the Jones Act[2] and under general maritime law for unseaworthiness and for maintenance and cure. He alleged that suit in state court was authorized by the saving to suitors clause of 28 U.S.C. § 1333(1).

Stolt removed the case to federal district court, alleging that Francisco had signed an employment contract agreeing to arbitrate claims against Stolt in the Philippines, and that this agreement was subject to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the Convention),[3] a convention to which the United States and the Philippines are both signatories. The United States implemented the Convention in 1970 through the enactment of 9 U.S.C. §§ 201-208 (hereinafter the Convention Act).

Francisco filed a motion to remand the case to state court, and Stolt filed a motion to compel arbitration under 9 U.S.C. § 206. The district court denied the motion to remand, granted the motion to compel arbitration, and dismissed the suit. This appeal by Francisco followed.

DISCUSSION

---

[2] 46 U.S.C. app. § 688.

[3] Done June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38, reprinted in 9 U.S.C.A. § 201 note.

Generally, the removal jurisdiction of the federal district courts extends to cases over which they have original jurisdiction.[4] "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."[5] Under § 203 of the Convention Act,[6] "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States." Notwithstanding the saving to suitors clause,[7] under § 205 of the Convention Act,[8]

> [w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.

The district court, therefore, had removal jurisdiction and subject matter jurisdiction if the pending dispute was one "falling under" the Convention.

---

[4] 28 U.S.C. § 1441(a).

[5] 28 U.S.C. § 1441(b).

[6] 9 U.S.C. § 203.

[7] 28 U.S.C. § 1333 provides that the federal district courts have exclusive jurisdiction of "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

[8] 9 U.S.C. § 205.

4

The district court concluded that it should compel arbitration because this case fell under the arbitration provision of the employment contract, as well as the provisions of the Convention Act and the Convention. Francisco essentially makes three arguments as to why the district court erred. He argues first that his case does not fall under the Convention Act because there is an exception making that Act inapplicable to seaman employment contracts. He argues second that, under the Convention itself, his case is not "capable of settlement by arbitration" and otherwise does not fall under the Convention. He argues third that his claims are not subject to the arbitration agreement.

A.    The Convention Act (9 U.S.C. §§ 201-208)

The Convention Act provides that "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States."[9] In applying the Convention, we have held that it "contemplates a very limited inquiry by courts when considering a motion to compel arbitration," and that the court should compel arbitration if (1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the agreement arises out of a commercial legal relationship, and (4) a party to the agreement is not an American

_____

[9] 9 U.S.C. § 206.

5

citizen.[10]  "If these requirements are met, the Convention requires district courts to order arbitration."[11]

These elements were met in the pending case.  Francisco, a Philippine national, signed a written employment contract stating that claims and disputes arising from his employment, including personal injury claims, were subject to arbitration in the Philippines.  The employment contract states that it shall be governed by the law of the Philippines and such conventions and treaties to which the Philippines is a signatory.  The Philippines and the United States are both signatories to the Convention.[12]

Title 9 of the United States Code has two chapters relevant to this appeal.  Chapter 1 contains the Federal Arbitration Act (Arbitration Act).  Chapter 2 is the Convention Act.  Francisco argues that under § 1 of the Arbitration Act,[13] seaman employment contracts are excluded from the reach of the Convention Act.  He argues that this exclusion applies to the Convention Act because, under § 208 of the Convention Act,[14] the Arbitration Act "applies to actions and proceedings brought under [the Convention

---

[10] Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co., 767 F.2d 1140, 1144-45 (5th Cir. 1985).

[11] Id. at 1145.

[12] 9 U.S.C. § 201 note (see notes following text of Convention indicating signatories).

[13] 9 U.S.C. § 1.

[14] 9 U.S.C. § 208.

Act] to the extent that [the Arbitration Act] is not in conflict with [the Convention Act] or the Convention as ratified by the United States."

Francisco correctly points out that the Arbitration Act does not cover seaman employment contracts. Section 2 of the Arbitration Act [15] generally recognizes the validity of arbitration provisions "in any maritime transaction or a contract evidencing a transaction involving commerce." However, § 1 of the Arbitration Act [16] expressly excludes "contracts of employment of seamen" from the reach of the Arbitration Act.

This exclusion of seamen employment contracts in the Arbitration Act, however, conflicts with the Convention Act and "with the Convention as ratified by the United States" under § 208 of the Convention Act, and therefore is not applicable to the

-----

[15] 9 U.S.C. § 2.

[16] Section 1 of the Arbitration Act, 9 U.S.C. § 1, states in its entirety:

**§ 1. "Maritime transactions" and "commerce" defined; exceptions to operation of title**

"Maritime transactions", as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; "commerce", as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

7

Convention Act. Article II(1) of the Convention itself is very broadly worded to provide that signing nations shall recognize arbitration agreements "in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration." The United States, in ratifying the Convention, agreed to apply it "only to differences arising out of legal relationships, whether contractual or not, which are considered as commercial under the national law of the United States."[17] Neither the Convention nor the limiting language ratifying the Convention contemplate any exception for seamen employment contracts or employment contracts in general. While the ratification language expresses an intent to limit the reach of the Convention to commercial relationships, there is no indication that employment contracts or seamen employment contracts are not considered "commercial."

In keeping with the ratification language, § 202 of the Convention Act states:

An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

---

[17] 9 U.S.C.A. § 201 note (see footnote 29 to notes following text of Convention). This limiting language was authorized by Article I(3) of the Convention, which provides that a signatory "may declare that it will apply the Convention only to differences arising out of legal relationships, whether contractual or not, which are considered as commercial under the national law of the State making such declaration."

8

Again, nothing in this language suggests an exception for seaman employment contracts. While the Arbitration Act contains such an exception, the language from § 202 of the Convention Act states only that the legal relationships covered by the Convention Act include those transactions covered by § 2 of the Arbitration Act. The Convention Act does not state that agreements falling under the Convention are exclusively limited to those which also fall under § 2 of the Arbitration Act, and makes no mention of the exclusion for seaman employment contracts found in § 1 of the Arbitration Act.

In short, the language of the Convention, the ratifying language, and the Convention Act implementing the Convention do not recognize an exception for seamen employment contracts. On the contrary, they recognize that the only limitation on the type of legal relationship falling under the Convention is that it must be considered "commercial," and we conclude that an employment contract is "commercial." Even if we were doubtful of the correctness of our conclusion, doubts as to whether a contract falls under the Convention Act should be resolved in favor of arbitration, in light of the Supreme Court's recognition generally of "the strong federal policy in favor of enforcing arbitration agreements,"[18] and its recognition that

> [t]he goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to

---

[18] Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 217 (1985).

9

arbitrate are observed and arbitral awards are enforced in the signatory countries.[19]

The Court has also recognized that the federal policy favoring arbitration "applies with special force in the field of international commerce."[20]

Francisco argues that as a matter of policy the Convention Act and the Arbitration Act should be applied uniformly. We cannot accept this argument. If the language of a statutory provision "is sufficiently clear in its context and not at odds with the legislative history, it is unnecessary to examine the additional considerations of policy . . . that may have influenced the lawmakers in their formulation of the statute."[21]

We note two other arguments which favor Francisco's position but do not ultimately alter our conclusion. Francisco argues that the exclusions of § 1 of the Arbitration Act are referred to in the statutory heading of § 1 as "exceptions to operation of title."[22] Title 9 of the United States Code includes the Arbitration Act in Chapter 1 and the Convention Act in Chapter 2. The use of the term "title" in the heading to § 1 therefore suggests that its exclusion of seaman employment contracts applies to both Acts.

---

[19] Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n.15 (1974).

[20] Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985).

[21] Aaron v. SEC, 446 U.S. 680, 695 (1980) (internal quotations omitted).

[22] See n. 16, supra (giving full heading and text to 9 U.S.C. § 1).

10

While the use of the term "title" in the heading is helpful to Francisco, it does not change our conclusion that the plain language of the Convention Act, enacted long after § 1 of the Arbitration Act,[23] does not admit to an exception for seaman employment contracts. "While words in the title of a statute or the heading of a section can shed light on the meaning of an ambiguous word or phrase in the text of a statute, they cannot create an ambiguity where none otherwise would exist."[24]

Francisco also points to legislative history which is helpful to him. In a Senate hearing on February 9, 1970, Richard Kearney, the chairman of a State Department advisory committee, gave the following testimony:

> [P]aragraph 3 of article I of the Convention permits a state party to the Convention to file a declaration that the Convention will apply only to legal relationships that are considered as commercial under the national law of that state. . . . [T]he United States will file such a declaration . . . .
>
> Consequently it is necessary to include the substance of this limiting declaration in the legislation that implements the Convention. This is what the first sentence of section 202 intends. It was not, of course, necessary to make any reference to the national law of the United States in the first sentence of section 202 because the definition of commerce contained in section 1 of the original Arbitration Act is the national law definition for the purposes of the declaration. A specific reference, however, is made in

_____

[23] Section 1 of the Arbitration Act was part of the 1947 reenactment and codification of the Federal Arbitration Act, which comprised the entirety of Title 9 when reenacted. See 61 Stat. 669, 674 (1947). The Convention Act, Pub. L. No. 91-368, 84 Stat. 692 (1970), was enacted in 1970.

[24] Natural Res. Def. Council v. EPA, 915 F.2d 1314, 1321 (5th Cir. 1990).

11

section 202 to section 2 of title 9, which is the basic provision of the original Arbitration Act.[25]

This testimony suggests that the definition of a transaction involving "commerce" in §§ 1 and 2 of the Arbitration Act is the same as the definition of a "legal relationship . . . which is considered as commercial" falling under the Convention Act. However, the witness does not specifically address whether the exclusion in § 1 of seaman employment contracts is also applicable to the then-proposed § 202 of the Convention Act.

Furthermore, the testimony of a witness not a member of Congress cannot bind this court where the plain language of the Convention Act does not provide an exception for seaman employment contracts. "Legislative history is problematic even when the attempt is to draw inferences from the intent of duly appointed committees of the Congress."[26] As discussed above, § 202 of the Convention Act states that a contract considered commercial <u>includes</u> those contracts described in § 2 of the Arbitration Act, makes no mention of § 1, and does not state that <u>only</u> those contracts described in § 2 of the Arbitration Act "fall under" the Convention. "Courts should not rely on inconclusive statutory history as a basis for refusing to give effect to the plain language of an Act of Congress . . . ."[27]

B.    <u>The Convention Itself</u>

---

[25] S. Rep. No. 91-702, at 6 (1970).

[26] <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 120 (2001).

[27] <u>Hubbard v. United States</u>, 514 U.S. 695, 708 (1995).

Francisco argues that, aside from the issue of the scope of the Convention Act, the Convention itself is inapplicable to his suit. He bases this argument on his claim that on September 11, 2000, the Supreme Court of the Philippines suspended section 20(G) of the standard terms and conditions of his employment contract. We assume without deciding that Francisco is correct regarding the suspension of section 20(G) by the Philippine court and the applicability of this change to his case.

Section 20 of the terms and conditions addresses compensation and benefits due the seaman for injury or illness. Section 20(G) provides:

> The seafarer . . . acknowledges that payment for injury, illness, incapacity, disability or death of the seafarer under this contract shall cover all claims arising from or in relation with or in the course of the seafarer's employment, including but not limited to damages arising from the contract, tort, fault, or negligence under the laws of the Philippines or any other country.

Francisco argues that under the terms of the Convention the suspension of section 20(G) means that the Convention no longer governs his claims against Stolt. We cannot agree with this argument. The suspension of section 20(G) only means that the seaman no longer acknowledges that the receipt of scheduled payments set out in the contract are the only benefits he can recover from his employer.

Francisco argues that under Article II(1) of the Convention, the treaty only applies to "differences . . . in respect of a defined legal relationship . . . concerning a subject matter capable of settlement by arbitration." Francisco similarly relies on Article V(2)(a) of the Convention, which states that recognition and enforcement of an arbitral award

13

may be refused if "[t]he subject matter of the difference is not capable of settlement by arbitration under the law of" the country where enforcement is sought. The suspension of section 20(G) does not, in our view, render the dispute incapable of settlement by arbitration under these provisions. Even if section 20(G) is rendered a nullity, the parties still agree to arbitrate their dispute under section 29 of the terms and conditions of the contract, discussed above; section 20(G) only limits the claims available to Francisco. If anything, the suspension would seem to give the arbitrators greater discretion to grant the relief to which Francisco thinks he is entitled. We note that in an arbitration before the Philippine National Labor Relations Commission (NLRC), Section 10 of the Migrant Workers and Overseas Filipino Act of 1995, included in the record, does not appear to limit awards to those damages set out in the employment contract. Instead, it provides that in cases before the NLRC labor arbitrators "shall have the original and exclusive jurisdiction to hear and decide . . . the claims arising out of an employer-employee relationship or by virtue of any law or contract involving Filipino workers for overseas deployment including claims for actual, moral, exemplary and other forms of damages."

Francisco also relies on Articles V(1)(c) and (e) of the Convention. Article V(1) provides that recognition and enforcement of an arbitral award may be refused "at the request of the party against whom it is invoked," if, under subpart (c), "[t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . . ." First, Article V(1) by its terms can only be invoked by a party resisting

14

an award. No award has been made and Francisco would have no reason of which we are aware to resist the enforcement of an arbitration award made to him under the employment contract. Second, the mere suspension of a contract term stating that the remedies enumerated in the contract are exclusive would not, in our view, make an arbitration in the Philippines one dealing with a dispute "not contemplated by and not falling within the terms of the submission to arbitration" under Article V(1)(c) and would not render an arbitration decision one "on matters beyond the scope of the submission to arbitration" under that provision.

Article V(1)(e) provides that recognition and enforcement of an award may be refused if "[t]he award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." Again, this provision only comes into play after an award has been made, and only at the request of the party resisting enforcement of the award, and is inapplicable here. Further, the mere fact that one clause of the employment contract purporting to limit the relief available to Francisco can no longer be enforced in the Philippines does not mean that a Philippine authority has "set aside" an award under subpart (e). If anything, the suspension of section 20(G) of the contract means that Francisco is eligible for greater relief from the Philippine arbitrators than before the suspension of that section's limitation on the employee's remedies.

C.     The Employment Contract

15

Francisco separately argues that his claims against Stolt are federal and general maritime tort claims that are not covered by the arbitration provision of the employment contract. The contract clearly provides remedies for work-related personal injuries, and states in paragraph 29 that "claims and disputes arising from this employment" are subject to arbitration in the Philippines. The arbitration provision is not by its language limited to contract claims but covers all claims "arising from this employment." Francisco alleged in his original petition that his injuries were sustained "in the course and scope of his employment." In Marinechance Shipping, Ltd. v. Sebastian,[28] we addressed whether a forum selection clause in a seaman employment contract applied to tort claims. We held that the clause—providing that "any and all disputes or controversies arising out of or by virtue of this Contract" shall be litigated in the Philippines—applied to tort claims brought by two Philippine seamen injured aboard a vessel while it was located in the Mississippi River.[29] We do not agree that the language of the forum selection clause in Marinechance is meaningfully different from the language of the arbitration clause in the pending case for purposes of deciding whether tort claims are covered, and note that "foreign arbitration clauses are but a subset of foreign forum selection clauses in general."[30]

---

[28] 143 F.3d 216 (5th Cir. 1998).

[29] Id. at 223.

[30] Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 534 (1995).

16

Francisco also contended at oral argument that an employee like himself who was not subject to a collective bargaining agreement (CBA) is not required to submit his claim to arbitration in the Philippines. Assuming that this argument was timely made, we reject it. Paragraph 29 of the Terms and Conditions states that parties subject to a CBA <u>shall</u> submit the claim or dispute to arbitration, but that parties not subject to a CBA <u>may</u> submit the claim or dispute "<u>to either the original and exclusive jurisdiction of the</u>" NLRC "<u>or to the original and exclusive jurisdiction of</u> the voluntary arbitrator or panel or arbitrators." As explained above in our footnote 1, cases submitted to the NLRC are resolved by arbitration. Accordingly, even though the contract uses the word "may" when describing the procedures available to an employee not covered by a CBA, the only two options available to such an employee both require arbitration. Especially in light of our general rule, recognized in a Convention Act case, that "whenever the scope of an arbitration clause is in question, the court should construe the clause in favor of arbitration,"[31] we read the contract as mandating arbitration of this dispute in the Philippines.

AFFIRMED.

---

[31] <u>Sedco</u>, 767 F.2d at 1145.