**Inacio Eufemio LOBO Plaintiff,**

v.

**CELEBRITY CRUISES, INC., Defendant.**

**Nos. 04–22132–CIV–GOLD, 04–22132–CIV–TURNOFF.**

United States District Court, S.D. Florida.

March 27, 2006.

---

Charles Lipcon of Lipcon, Margulies & Alsina, P.A., Miami, FL, Elizabeth K. Russo and Jonathan Gaines of Russo Appellate Firm, P.A., Miami, FL, Counsel for Plaintiffs.

Sanford L. Bohrer and Scott D. Ponce of Holland & Knight LLP, Miami, FL, Counsel for Defendant.

### ORDER AFFIRMING REPORT AND RECOMMENDATION AND DISMISSING CASE WITH PREJUDICE

GOLD, District Judge.

**THIS MATTER** comes before the Court on the "Plaintiff's Objection to Magistrate's Recommendation and Report on Defendant's Motion to Dismiss Second Amended Complaint" [D.E. 57]. The Defendant filed a response essentially arguing that the objections, with the exception of its "Introduction" and the last sentence of its "Conclusion" were verbatim reproductions of Plaintiff's Response to Celebrity's Motion to Dismiss the Second Amended Complaint [D.E. # 45]. I held oral argument on Plaintiff's objections on Wednesday, March 22, 2006.

Upon reviewing the matter, I find no factual disputes and conclude that the Magistrate Judge's legal conclusions are correct. Accordingly, I adopt the Report and Recommendations [D.E. # 56] in its entirety and hereby dismiss the Second Amended Complaint [D.E. # 38] with prejudice in that any further amendment to the Second Amended Complaint would be futile and the legal issues addressed are ripe for resolution on appeal by the Eleventh Circuit Court of Appeals. I hereby briefly add to the Magistrate Judge's well-reasoned Report and Recommendation.

■ The Plaintiff's employment agreement [Exhibit B to the Second Amended Complaint] is a commercial legal relationship under the Convention Act, regardless of the FAA seamen exemption. Under that agreement, grievances and disputes arising on the vessel or in connection with the agreement "... which cannot be resolved onboard or between the parties shall be referred to the arbitration as elsewhere provided herein." [Exhibit B, Article 26, page 12]. The place of arbitration shall be either the country of the seaman's citizenship or Miami, Florida. *Id.*

Under such circumstances, the Eleventh Circuit has determined that the seamen employment contract exemption to the Federal Arbitration Act does not remove from the Convention Act's scope a subset of commercial employment agreements such as Plaintiff's signed contract. *Bautista v. Star Cruises,* 396 F.3d 1289, 1298

(11th Cir.2005). This Court must order arbitration if four conditions are met: (1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a signatory to the Convention, (3) the agreement to arbitrate arises out of a commercial legal relationship, and (4) there is a party to the agreement who is not an American citizen. *Id.* at 396 F.3d 1289, 1294 n. 7.

Here, the Magistrate Judge correctly concluded that the allegations answered each of these questions affirmatively. Thus, the Court must send this matter to arbitration unless one of the permissible defenses applies-i.e. that the agreement is null and void, inoperative or incapable of being performed. While Plaintiff has raised allegations about disparity in bargaining position, the Eleventh Circuit, in *Bautista*, has rejected such arguments when the Plaintiff does not explain how this makes for a defense under the Convention. *Id.* at 1301.

■ The only other argument that requires further comment is Plaintiff's contention that the arbitration clause does not defeat an individual seaman's right to proceed in Federal Court on the Statutory Wage Claim provided for in Title 46, U.S.C. § 10313. In essence, Plaintiff argues that his claims brought under 46 U.S.C. §§ 10313(f) and (g) are exempt from the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), and its implementing legislation, 9 U.S.C. §§ 202–209 ("the Convention Act"). Plaintiff bases his position on *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 375, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971). There, the Supreme Court held that claims for unpaid wages and penalty wages under § 10313 cannot be forced into arbitration, and that a seaman may assert such claims in federal court regardless of whether the seaman's employment contract contains an arbitration provision.

The difficulty with the *Arguelles* decision as being despositive of this case is that the Court did not address, or even mention, the Convention and Convention Act, because what was at issue in *Arguelles* was the duty to follow the collective bargaining grievance procedures under § 301 of the Labor Management Relations Act. The United States implemented the Convention in 1970 through the enactment of the Convention Act, while *Arguelles* was argued before the circuit court on January 12, 1968–at least two years before the Convention was implemented. Accordingly, the Supreme Court did not, in *Arguelles*, address the underlying policy and goals of the Convention, especially in the context of enforcing arbitration provisions contained in international seamens' employment contracts.

Specifically, at the core of the Supreme Court's decision in *Arguelles*, was its conclusion that:

> Enforcement by or against labor unions was the main burden of s 301, though standing by individual employees to secure declarations of their legal rights under the collective agreement was recognized. Since the emphasis was on suits by unions against unions, little attention was given to the assertion of claims by individual employees and none whatsoever concerning the impact of s 301 on the special protective procedures governing the collection of wages of maritime workers. We can find no suggestion in the legislative history of the Labor Management Relations Act of 1947 that grievance procedures and arbitration procedures were to take the place of the old shipping commissioners or to assume part or all of the roles served by the federal courts protective of the rights of seaman since 1790.

*Arguelles,* 400 U.S. at 355–56, 91 S.Ct. 409.

In contrast, subsequent to *Arguelles,* the United States Supreme Court, in *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), recognized the importance of the Convention by stating:

> The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.

The Eleventh Circuit has cited to *Scherk* in *Bautista, id.,* 396 F.3d at 1299–1300, in support of the proposition that to read Industry-specific exceptions into the broad language of the Convention Act would be to hinder the Convention's purpose. Based on this broad language of the Convention Act, the Eleventh Circuit held that "... in the context of the framework of title 9 and the purposes of the Convention, we find no justification for removing from the Convention Act's a subset of commercial employment agreements. The crewmembers' arbitration provisions constitute commercial legal relationships within the meaning of the Convention Act." *Id.* at 1300.

It is the advent of the Convention and the Convention Act, together with its broad policies, which distinguishes this case from *Arguelles.* In *Arguelles,* the Court's recognition of the parochial desire to protect seamen lead it to trump the underlying policy of the LMRA. Given the Supreme Court's later position in *Scherk,* this case is not governed by *Arguelles*

because the underlying policies at issue between the LMRA and the Convention and Convention Act are diametrically different. As noted in *Bautista,* the Eleventh Circuit, relying on *Scherk,* already has recognized that the same policies do not apply with regard to foreign seamen governed under the Convention and Convention Act, because: "[i]n pursuing effective, unified arbitration standards, the Convention's framers understood that the benefits of the treaty would be undermined if domestic courts were to inject their 'parochial' values into the regime." *Id.* at 1300. Accordingly, Plaintiff's claim cannot be carved out from the Convention. In that regard, I concur with the Magistrate Judge, that a contrary holding "... would go against the reading proscribed in *Bautista,* because it would be reading into the Convention Act an insular (parochial) attitude of the courts to protect seamen." Report and Recommendation, page 10. Given that the Plaintiff gets to arbitrate in Miami, Florida, namely within the same jurisdiction of the Southern District of Florida, such a result is neither unfair nor onerous. This is not a situation where the contract at issue required arbitration in an untenable forum.[1]

These conclusions are supported by the Fifth Circuit's decision in *Lim v. Offshore Specialty Fabricators, Inc.,* 404 F.3d 898 (5th Cir.2005). Although the *Lim* case dealt with a different federal statute, the Federal Labor Standards Act, the case is nonetheless persuasive in the context of federal wage statutes.

In the *Lim* case, a Filipino seaman sued his employer, a Louisiana corporation that owned the foreign-flagged vessel on which he worked, alleging overtime violations un-

---

**1.** Admittedly, this matter is one of first impression. Neither side has cited cases which directly address whether the central holding in *Arguelles* is now distinguishable in light of the Convention and Convention Act. This Court can only look to the Eleventh Circuit's opinion in *Bautista* for guidance.

der the Fair Labor Standards Act (FLSA). The employer moved to dismiss, claiming that the standard terms of the seaman's employment contract required arbitration of the claim in the Philippines, and that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards required enforcement of the arbitration clause. The district court denied the dismissal, holding that the arbitration clause violated Louisiana law, which signaled a strong public policy against a forum selection clause in an employment contract and rendered the clause enforceable. 404 F.3d at 901. The district court did not address two other grounds raised by the plaintiffs whereby it was asserted that the arbitration clause was unenforceable. These grounds were, first, that arbitration has never been required in seamen's wage litigation, and, second, that the arbitration clause was invalid under the terms of the Convention, because plaintiffs' FLSA claims were rooted in United States law and cannot be resolved through foreign arbitration.

The Fifth Circuit vacated the district court's order. In reversing, it only addressed two of plaintiffs' issues and held "... (1) the Convention and the Supremacy Clause require enforcement of the arbitration clause, and (2) there is no exception to that requirement based on any one of the three advanced by plaintiffs, including Louisiana's anti-forum-selection clause statute." *Id.* at 902. It rejected plaintiffs' argument that arbitration has never been required in seamen's wage litigation, and that clauses requiring such arbitration are invalid. *Id.* Applying these principles, although, admittedly, reached in another context, it does not appear that the Convention Act intended to exempt the Statu-

tory Wage Claim Act from its coverage notwithstanding the Supreme Court's decision in *Arguelles.* Rather, I conclude that the Convention, the Convention Act and the Supremacy Clause require enforcement of the arbitration clause at issue in this case. I would leave for another day what would happen if arbitration was required in a manner or context which resulted in an unconscionable hardship for the seaman. In any event, I conclude that such is not the result here.

**WHEREFORE** it is **ORDERED** that the Report and Recommendation of the Magistrate Judge [D.E. # 56] is hereby **ADOPTED** and Plaintiff's Second Amended Complaint [D.E. 38] is hereby **DISMISSED WITH PREJUDICE.**

### *REPORT AND RECOMMENDATION*

TURNOFF, United States Magistrate Judge.

THIS CAUSE comes before the Court for a Report and Recommendation on Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [DE 42], which was referred to the undersigned by the Honorable Alan S. Gold [DE 52]. Plaintiff Inacio Eufemio Lobo ("Lobo"), filed a one-count complaint alleging unpaid wages pursuant to 46 U.S.C. § 10313(f).[1] Following removal of the case to federal district court, Defendant Celebrity Cruises, Inc. ("Celebrity"), moved to dismiss for improper venue alleging that the parties were compelled to arbitrate this dispute pursuant to a written agreement between the parties and pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"). Plaintiff contends that his statuto-

---

1. Originally, Plaintiff filed a four-count complaint in circuit court, which was removed to federal district court by Defendant. Plaintiff filed an amended complaint which was dis-

missed without prejudice by Judge Gold. Plaintiff then filed the Second Amended Complaint which is the subject of the instant motion to dismiss.

ry right to bring a federal claim for unpaid wages is not abrogated by the Convention and that the arbitration clause in the agreement is permissible and unenforceable. The parties' respective arguments ask the Court to assess the balance between the protection of seamen, who have traditionally been viewed as the "wards of the courts," [2] and the interests supporting enforcement of international arbitration agreements. The Court has considered the motion, response, reply, and the pertinent portions of the record, and being otherwise duly advised in the premises, the undersigned recommends that Defendant's Motion to Dismiss be GRANTED.

## Background [3]

This case is brought as a putative class action pursuant to the Seaman's Wage Act, 46 U.S.C. § 10313, for unpaid wages and penalty wages. Lobo is a seaman [4] employed as a stateroom attendant aboard cruise ships operated by Celebrity. 2nd Am. Compl. at ¶ 2. Celebrity is a foreign corporation registered to conduct business in Florida, and conducting business in Miami, Florida. Id. at ¶ 3. On or about July, 1991, Lobo and Celebrity entered into a contract of employment under which Lobo was hired as a stateroom attendant. Id. at ¶ 6. Lobo belongs to a union, Federazione Italianan Transporti–CISL–ITF Foreign Flag Department Italy ("the Union").[5] Subsequently, Lobo and Celebrity entered into a series of sign-on employment agreements for voyages on particular ships owned by Celebrity. Id. The sign-on employment agreements provide that the "Collective Bargaining Agreement between the Company and the Union is incorporated into and made part of this Employment Agreement" and that Celebrity and Lobo are bound by its terms and conditions. Id. at ¶ 7.

According to the employment contract, Lobo's compensation consists of wages in the amount of $50.00 per month paid directly by Celebrity and gratuities provided by passengers. Id. at ¶ 9. By the same token, the employment contract requires Celebrity to recommend to its passengers that they pay gratuities to Lobo in accordance with the pay scale contained in the Collective Bargaining Agreement ("CBA"). Id. at ¶ 10. Celebrity provides literature to its passengers stating that it is customary to pay gratuities to certain employees and suggesting a rate of $3.50 per passenger per day for stateroom attendants. Id. at ¶ 14.

According to the Second Amended Complaint, some time after August 31, 2002, Celebrity placed "assistant stateroom attendants" on it ships to work in tandem with the stateroom attendants. Id. at ¶ 17. Although these assistants are also paid wages of $50.00 per month by Celebrity, Celebrity does not suggest to its passengers that they pay any gratuity to them. Id. at ¶ 18. Further, the CBA makes no provision for the payment of any gratuity

---

**2.** See generally *Socony–Vacuum Oil Co. v. Smith*, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939).

**3.** For purposes of a motion to dismiss, all factual allegations in the Second Amended Complaint are taken as true. *Murphy v. F.D.I.C.*, 208 F.3d 959, 962 (11th Cir.2000); *Harper v. Thomas*, 988 F.2d 101, 103 (11th Cir.1993). Thus, where appropriate, citations are made to the Second Amended Complaint, as 2nd Am. Compl.

**4.** Under 46 U.S.C. § 10101, a "seaman" is "an individual (except scientific personnel, a sailing school instructor, or a sailing school student) engaged or employed in any capacity on board a vessel." 46 U.S.C. § 10101(3)(2004).

**5.** Although in the Second Amended Complaint Lobo does not allege directly his membership in this union, he acknowledges the operation of the Collective Bargaining Agreement as negotiated between Celebrity and the union.

to an *assistant* stateroom attendant nor does it require Lobo to provide for the compensation of the assistants. Id. at ¶ 11. Instead, Celebrity imposed upon the stateroom attendants the requirement that they personally pay wages to the assistant stateroom attendants from their own wages, at the rate of $1.20 per passenger per day. Id. at ¶ 17. Lobo alleges that Celebrity has been able to impose this requirement through duress and as a result of the unequal bargaining position of the parties. Id. at ¶ 19.

In addition to the requirement of paying the assistant stateroom attendants, Lobo alleges that after August 31, 2002. Celebrity further imposed upon him the requirement that he personally pay wages to the Chief Housekeeper from his own wages, at the rate of $0.50 per passenger per day. Id. at ¶ 20. Although Lobo alleges that this requirement is triggered only when passengers do not themselves provide such gratuities, which are suggested to them by Celebrity, many passengers fail or decline to provide a gratuity for the Chief Housekeeper. Id. at ¶ 20.

As a result of this practice by Celebrity, Lobo claims that they have failed to pay him the full amount of his wages as required by 46 U.S.C. § 10313(f) and that the withholding and ongoing delay in paying his wages was and continues to be wilful, arbitrary, unreasonable, unjust, and without sufficient cause. Id. at ¶¶ 30, 31.

According to Lobo, pursuant to 46 U.S.C. § 10313(g), he is entitled to a penalty in the amount of two (2) days' wages for each day payment has been delayed. Id. at ¶ 34.[6]

Celebrity moves to dismiss Lobo's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(3) alleging improper venue. Celebrity contends that the employment agreement incorporates the CBA, which contains a written arbitration provision and that this agreement must be enforced, because it is subject to the Convention.[7] In his Response to the Motion to Dismiss [DE 45], Lobo makes two arguments. First, Lobo argues that claims brought under 46 U.S.C. § 10313(f) and (g) are exempt from the Convention[8] solely relying on the case of *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971), for this proposition. Second, Plaintiff argues that the arbitration provision contained in Article 26 of the CBA is permissible, not mandatory, and that notwithstanding, the CBA should be ignored, because it was the result of duress and Celebrity's unequal bargaining power. In their Reply [DE 49], Celebrity argues that statutory claims for unpaid wages and penalty wages are not exempt from the Convention and that the arbitration provision of the CBA is mandatory and enforceable, pursuant to the Convention Act.

---

**6.** 46 U.S.C. § 10313 provides in pertinent part:

(f) At the end of a voyage, the master shall pay each seaman the balance of wages due the seaman within 24 hours after the cargo has been discharged or within 4 days after the seaman is discharged, whichever is earlier.

(g) When payment is not made as provided under subsection (f) of this section without sufficient cause, the master or owner shall pay to the seaman 2 days' wages for each day payment is delayed.

46 U.S.C. § 10313(f)-(g) (2004).

**7.** Paragraph 26 of the CBA, reads in pertinent part:

Grievances and disputes arising on the vessels or in connection with this Agreement which can not be resolved onboard or between the parties shall be submitted to arbitration as elsewhere provided for herein. (2nd Am. Compl. Exh. B at Page 12).

**8.** The Convention Act does not explicitly exempt seamen employment contracts from its ambit.

## Standard of Review

 Celebrity claims that the mandatory arbitration provision contained in Article 26 of the CBA as well as the Convention and its implementing legislation, 9 U.S.C. §§ 202–208 ("Convention Act"), require dismissal of this action. Both the United States and Portugal[9] are signatories to the Convention, with the former implementing the Convention in 1970 through the enactment of 9 U.S.C. §§ 201–208 (collectively, "the Convention Act").[10] The Eleventh Circuit has held that "motions to dismiss upon the basis of choice-of-forum and choice-of-law clauses are properly brought pursuant to Fed.R.Civ.P. 12(b)(3) as motions to dismiss for improper venue." *Lipcon v. Underwriters at Lloyd's London,* 148 F.3d 1285, 1290 (11th Cir.1998). When a Federal Rule of Civil Procedure 12(b)(3) motion to dismiss for improper venue is based on a forum selection clause, the plaintiff has the burden of showing that venue is proper. See *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 18, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Moore v. AT & T Latin America Corp.,* 177 F.Supp.2d 785, 788 (N.D.Ill.2001); and *2215 Fifth St. Assocs. v. U Haul Int'l. Inc.,* 148 F.Supp.2d 50, 54 (D.D.C.2001). The court must resolve factual conflicts in the parties' submissions in favor of the plaintiff, and may look to facts outside the complaint to determine whether venue is proper. See *Moore,* 177 F.Supp.2d at 788; *National Hydro Systems v. Summit,* 731 F.Supp. 264, 265 (N.D.Ill.1989) (citing *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.,* 726 F.2d 1209, 1215 (7th Cir.1984)). If there is no evidentiary hearing, courts will allow a plaintiff to carry the burden by establishing facts, taken as true, that establish venue. *Kozial v. Bombardier–Rotax GmbH,* 129 Fed.Appx. 543 (11th Cir. Fla., 2005); *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990). All undisputed facts in the complaint are accepted as true and where facts are contested the court is to draw all reasonable inferences in favor of the plaintiff. *Id.*

## Discussion

### I. The FAA's Exclusion of Seamen Contracts Does Not Apply to the Convention Act.

#### A. *U.S. Bulk Carrier, Inc. v. Arguelles*

Lobo asserts that seamen contracts are exempted from the coverage of the Convention Act. Although the Convention Act does not explicitly exempt seamen employment contracts, Lobo proceeds upon the assumption that the exemption contained in § 1 of the Federal Arbitration Act ("FAA") applies to the Convention Act, thus precluding enforcement of the arbitration provision of the CBA, as incorporated into the employment agreements. Lobo relies mainly on the U.S. Supreme Court holding in *Arguelles* which states that a seamen's right to pursue his statutory claim for contractual·wages in federal court cannot be thwarted by an arbitration clause. 400 U.S. at 357, 91 S.Ct. 409. At issue in *Arguelles* was to what extent, if any, the enforcement mechanism of the Labor Management Relations Act (the "LMRA") required the plaintiff-seamen to

---

**9.** In the sign on employment agreement attached to the Second Amended Complaint as Exhibit A, Lobo sets forth his nationality as Portuguese.

**10.** Title 9 of the United States Code deals with arbitration and is divided into three chapters, two of which are relevant to this case. Chapter 1 (9 U.S.C. §§ 1–16) is known as the Federal Arbitration Act ("FAA") which addresses domestic arbitration agreements. Chapter 2 (9 U.S.C. §§ 201–208) deals with the Convention and its enabling legislation, and governs enforcement of international arbitration agreements.

submit his statutory claim to arbitration as provided in his collective bargaining agreement. *Id.* Citing the longstanding history of the right of seamen to bring claims in federal court, the Supreme Court held that this history warranted an exception from the LMRA for statutory claims of wages and penalties. *Id.* at 355–57, 91 S.Ct. 409. The Court further reasoned that the exception was also a product of their failure to find in the legislative history of the LMRA any indication to abrogate the statutory right. *Id.* Likewise, Lobo claims that the Convention did not abrogate his federal statutory rights. However, *Arguelles* was decided in 1968, almost two (2) years *prior to* the enactment of the Convention in 1970. Thus, the *Arguelles* Court does not account for the impact of the Convention Act's strong implication toward arbitration.

### B. The Convention Act of 1970

The FAA was enacted in 1925 to make certain arbitration agreements enforceable. in 1947, Congress codified the FAA as 9 U.S.C. §§ 1–16. In 1970, Congress enacted legislation to implement the New York Convention, which was designated the Convention Act, and was enacted as an amendment to the FAA. The FAA became Chapter 1 of Title 9, and the Convention Act became Chapter 2 (§§ 202–208). Together, the two acts operate to enforce arbitration agreements in both domestic and foreign employment contracts.

▆ Section 1 of the FAA states that "contracts of employment of seamen" are not covered by the Act. 9 U.S.C. § 1. This provision prevents arbitration clauses in employment contracts between U.S. seafarers and their U.S. employers from being enforceable. See e.g., *Brown v. Nabors Offshore Corp.*, 339 F.3d 391 (5th Cir.2003). While domestic arbitration agreements between seamen are exempt from the reach of the FAA, the ultimate issue in the case at bar turns on whether a similar exemption can be read into the Convention Act for foreign employment agreements. As more fully discussed *infra*, application of the seamen exemption in the domestic arbitration act to the international context is unsupported by the plain language of the Convention Act.

There are two main cases that have addressed this issue: (1) *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270 (5th Cir.2002); and (2) *Bautista v. Star Cruises*, 396 F.3d 1289 (11th Cir. 2005). In *Francisco*, the Fifth Circuit addressed whether a seamen could bring a personal injury claim against its employer despite an arbitration clause in the employment agreement. The plaintiff argued that the reach of the Convention Act did not extend to seamen employee contracts. After reviewing the language of the Convention, the ratifying language, the Convention Act implementing the Convention, and also the legislative history, the court found no exception for seamen employment contracts. 293 F.3d at 274–75. In its holding, the Court emphasized the goals of the Convention stating that its purpose was to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts." *Francisco*, 293 F.3d at 275.

Following the footsteps of *Francisco*, *Bautista* presented the same issue before the Eleventh Circuit. In both *Bautista* and *Francisco*, the parties were claiming remedies for injuries occurring onboard the vessel. In addition, the plaintiffs in *Bautista* had previously agreed in their employment contracts that any disputes would be resolved via arbitration. After an initial investigation as to whether the Convention Act was applicable, the Eleventh Circuit found that, in accordance with their sister Circuit, no justification existed for removing from the Convention Act's

scope a subset of commercial employment agreements. *Bautista*, 396 F.3d at 1299. The Eleventh Circuit further stated that "the crew-members' arbitration provisions constitute commercial legal relationships within the meaning of the Convention Act [and must be enforced]." *Id.* As in *Francisco*, *Bautista* was decided primarily on the resistance to "read industry-specific exceptions" into the Convention Act. *Id.* The Court stated that, "while the parochial desire to protect seamen trumped the LMRA in *Arguelles*," the purpose of the Convention would be undermined if "domestic courts decided now to do the same." *Id.* This statement was based on the underlying desire of the Convention and its framers to "unify the standards by which agreements to arbitrate are observed." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 41 L.Ed.2d 270(1974). Further, "in pursuing effective, unified arbitration standards, the Convention's framers understood that the benefits of the treaty would be undermined if domestic courts were to *inject their 'parochial' values into the regime.*" (Emphasis added). *Bautista*, 396 F.3d at 1300. The plaintiffs would have us hold that there is an exception for seamen to run afoul of arbitration agreements. Such a holding would go against the reading proscribed in *Bautista*, because it would be reading into the Convention Act an insular (parochial) attitude of the courts to protect seamen.

Although these two opinions evidence a strong trend towards enforcing arbitration provisions in post-Convention cases, neither of them specifically addresses whether the right to bring a claim pursuant to the Seamen's Wage Act is abrogated by a written arbitration employment agreement. However, by refusing to recognize an exception to the Convention Act, these courts have implicitly suggested that there is no longer a claim in federal court when an arbitration provision exists, at least where the claims arise from injuries sustained onboard vessels.

The only case that nearly approaches the issue of federal wage claims in the post-Convention years is *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898 (5th Cir.2005). In *Lim*, the plaintiffs-seamen brought claims for alleged violations of the Fair Labor Standards Act ("FLSA"). The employer sought to enforce an arbitration provision pursuant to the Convention Act, and the plaintiffs argued that *Arguelles* precluded enforcement of the arbitration provision. Following the district court's denial of 12(b)(3) and (1) motions to dismiss, the defendants appealed to the Fifth Circuit. The Fifth Circuit rejected the defendant's argument and distinguished *Arguelles* on three grounds. First, the plaintiffs in *Arguelles* were claiming denial of contractual wages under the Seamen's Wage Act, whereas in *Lim*, the claim was for *extra-contractual* wages (overtime) under the FLSA. *Lim*, 404 F.3d at 907. Second, the court noted that, "at issue in *Arguelles* was the duty to follow the collective bargaining grievance procedure under the LMRA, a statute and procedure absent here." *Id.* Finally, even though *Arguelles* did hold that the grievance procedures did not reach the seamen's wage claims, the court *did not* declare those claims exempt from arbitration in all situations. *Id.* In essence, the court recognized the right in *Arguelles* and distinguished away its applicability without explicitly affirming or rejecting its validity.

Notwithstanding, the court's opinion clearly questions the continuing existence of the right of seamen to bring wage claims in federal court in light of the Convention Act. This much is evidenced by the Court's second reason distinguishing *Arguelles*—the grievance procedures of the LMRA are absent in *Lim*. In *Lim*, the Convention Act is the present rule of law

mandating adherence to arbitration procedures. By contrasting the two mechanisms being challenged in both *Lim* and *Arguelles*, the Court is not saying that *Arguelles* is no longer valid; instead, the court is questioning whether the policy of the Convention Act, along with the strong presumption if favor of arbitration, require seamen to follow arbitration provisions when asserting wage claims. Further, by holding that the right to petition the court found in the FLSA is non-existent in the face of an arbitration provision, the court is stating that existence of a federal right will not preclude enforcement of the Convention Act.

Given the courts' vigilance in applying the Convention Act with the full force for which it stands-that arbitration provisions shall be enforced despite federal statutory rights to the contrary-and given the tendency of courts to favor arbitration over litigation [11], *Arguelles* is not persuasive in deciding against the enforcement of the arbitration clause in the CBA in this case. Moreover, the presumption toward arbitration "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 631, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). As stated by the Court, "the concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require the we enforce [international arbitration agreements], even assuming that a contrary result would be forthcoming in a domestic context." *Id.* at 629, 105 S.Ct. 3346.

## III. Application of the Convention Act.

If an international arbitration clause falls under the Convention Act, courts are to conduct "a very limited inquiry" in deciding whether to compel arbitration. *See Ledee v. Ceramiche Ragno,* 684 F.2d 184, 186–87 (1st Cir.1982); see also *STOLT,* 293 F.3d at 273. The Convention applies to international arbitration clauses when: (1) there is an international agreement in writing to arbitrate the dispute; (2) the agreement provides for arbitration in the territory of a Convention signatory; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen. *STOLT,* 293 F.3d at 273; *see also* 9 U.S.C. § 202.

### A. Is Agreement to Arbitrate In Writing?

In order for the Convention to apply, there must be an agreement in writing to arbitrate. The element is satisfied here because the arbitration clause is contained in the CBA, which is a written contract signed by Lobo's Union and Celebrity. Further, by arguing Celebrity's improper conduct in contravention to the CBA, Lobo admits that the CBA governs this dispute.

### B. Is Arbitration In the Territory Of A Convention Signatory?

To satisfy this element, the arbitration must be held in a territory of a signatory of the Convention. Article 26 states "the place of arbitration shall be either the country of the seafarer's citizenship or Miami, Florida." The Sign–On Employment Agreement, attached to the Second Amended Complaint as Exhibit A, lists Plaintiff's nationality as "Portugal." Both

---

**11.** The U.S. Supreme Court has expressed a liberal policy favoring the enforcement of arbitration provisions. See *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 625, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)(citing *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

of these countries were signatories to the Convention. *See* 9 U.S.C.A. § 201.

### C. Does The Agreement Arise Out Of A Commercial Relationship?

This inquiry hinges on whether the agreement between the seamen and the employer, whether contractual or not, is considered commercial. *See Bautista,* 396 F.3d at 1294. The United States Supreme Court, in *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), established that employment contracts qualify as "contracts evidencing a transaction involving interstate commerce" under the FAA. *Id.* at 113, 121 S.Ct. 1302. Therefore, as a general matter, the FAA covers arbitration agreements in employment contracts. *Id.* While the Supreme Court reaffirmed that § 1 of the FAA exempts contracts of employment of seamen from that general rule, it addressed the likely reasons for the exclusion by Congress:

> By the time the FAA was passed, Congress had already enacted federal legislation providing for the arbitration of disputes between seamen and their employers (citations omitted).... It is reasonable to assume that Congress excluded "seamen" ... from the FAA for the simple reason that it did not wish to unsettle established or developing statutory dispute resolution scheme covering specific workers.

*Id.* at 120–21, 121 S.Ct. 1302. This language supports the conclusion that while seamen employment contracts involve interstate commerce and are commercial, the legislature carved out a specific exemption in the domestic context, because it had passed other legislation to govern disputes between seamen and their employers. There is no indication that Congress intended the specific exemption to extend beyond the domestic context and into the international realm. Based upon the foregoing analysis and the case law, the Court concludes that the international seamen employment contracts at issue are "commercial" under the law of the United States. See *Francisco,* 293 F.3d at 274.

### D. Is One Of The Parties To The Agreement Not An American Citizen?

This element requires that at least one party to the agreement not be an American citizen, or that the commercial relationship have some reasonable relation with one or more foreign states. As established by the Exhibits to the Second Amended Complaint, neither Lobo nor his union are American citizens.

### V. Is The Arbitration Agreement Enforceable?

Plaintiff makes a last-ditch effort by arguing that, even if the Court finds that the Convention Act applies to his claims, the arbitration clause is not enforceable. First, he argues that the arbitration clause is permissive, not mandatory, and thus should not be enforced. Second, he argues that the CBA should be ignored, because it was the result of duress and Celebrity's unequal bargaining power. Neither of these claims have merit.

### A. Arbitration Agreement Is Mandatory.

Lobo relies on the text of Article 26 to support his claim that the arbitration provision is permissive. Article 26 reads in pertinent part:

> Provided that the seafarer has notified the Union of his or her complaint, claims and lawsuits may not be brought by any seafarer or party hereto except to enforce arbitration or a decision of the arbitrator or to complain of the decision of the arbitrator.

Lobo asserts that actions in federal court are only precluded if this language has

been satisfied. In other words, Lobo contends that, if seamen do not notify their respective unions of their claims, they may bring actions in court. However, this argument is unavailing when viewed in light of the rest of the agreement.

Specifically, the first clause in Article 26 states:

> Grievances and disputes arising on the vessels or in connection with this Agreement which can not be resolved onboard the parties shall be referred to the arbitration as elsewhere provided for herein. (Emphasis added).

From the usage of the word "shall," it is clear that this provision mandates arbitration. The language "as elsewhere provided" is merely used in reference to the place of arbitration. To construe the word "shall" as being permissive would render the provision superfluous and meaningless. *See e.g. Florida Polk County v. Prison Health Services, Inc.*, 170 F.3d 1081, 1084 (11th Cir.1999). In *Florida Polk County*, the Eleventh Circuit instructs courts to construe arbitration provisions so as to avoid interpretations that would render the provisions meaningless. To interpret the first clause in Article 26 as permissive, would render the arbitration provision meaningless.

### B. The CBA Was Neither the Result of Duress Or Unequal Bargaining Power.

Lobo next argues that the CBA was the result of unequal bargaining power and duress. Where a standard employment contract, which included arbitration provisions, was negotiated by a cruise line and a governmental bargaining unit (Union), there is no factual basis for the assertion that the cruise line took advantage of the seamen in negotiating the language and terms of the contract. *See Bautista*, 286 F.Supp.2d at 1362–63. Here, the CBA demonstrates that its terms—including the arbitration provision—were the result of

arms' length negotiations between Celebrity and Lobo's union. No facts are alleged to the contrary.

Lobo also contends that Celebrity bears the burden of proving that it has an agreement to arbitrate with him. This assertion is misplaced. Because of the strong presumption in favor of arbitration, a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity. *See Lim*, 404 F.3d at 906. Lobo, not Celebrity, is seeking to invalidate the arbitration agreement and thus it is he who bears the burden. This burden is far from satisfied.

### Conclusion

The arbitration clause contained in the Collective Bargaining Agreement and referenced in the employment contracts between Lobo and Celebrity is enforceable and subject to the Convention Act. In accordance with the Convention Act, the claims brought before this Court must be submitted to arbitration.

Accordingly, it is RESPECTFULLY RECOMMENDED that Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [DE42] be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), Rule 72(b) of the Federal Rules of Civil Procedure, and Magis. J.R. 4(b) of the Local Rules of the United States District Court for the Southern District of Florida, the parties, within ten (10) days after being served with a copy of this Report and Recommendation, may file with the Clerk of Court, and serve on all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made, the specific basis for such objections, and supporting legal authority. Any party may respond to another party's ob-

jections within ten (10) days after being served with a copy thereof.

Feb. 16, 2006.